UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHABSE ROSENBERG,

                          Plaintiff,

-against-

LOANDEPOT, INC.,

                          Defendant.

**OPINION AND ORDER**

21-CV-08719 (PMH)

PHILIP M. HALPERN, United States District Judge:

Shabse Rosenberg ("Plaintiff") brings this action against LoanDepot, Inc. ("Defendant") for violating the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. (*See* Doc. 1, "Compl.").[1] Plaintiff brings two claims for relief against Defendant: (i) willful violation of the FCRA; and (ii) negligent violation of the FCRA. (*Id.*).

Defendant moves under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the claims asserted against it. Defendant served its motion papers on May 6, 2022 (Doc. 24; Doc. 25, "Def. Br."; Doc. 26), Plaintiff served her opposition brief on May 27, 2022 (Doc. 28, "Opp. Br."), and the motion was briefed fully with service of Defendant's reply memorandum of law in further support of its motion and the filing of all motion papers on June 10, 2022 (Doc. 27, "Reply").

For the reasons set forth below, Defendant's motion to dismiss is GRANTED.

## BACKGROUND

Plaintiff opened a credit account with Defendant on March 18, 2019. (Doc. 28-1, "Credit Report" at 53). Defendant reported information relating to Plaintiff's account with Equifax that

---

[1] Plaintiff also originally brought claims against Equifax Information Services, LLC ("Equifax"), but those claims were voluntarily dismissed on August 9, 2022. (Doc. 30).

was ultimately used to prepare the Credit Report. (*Id.*; Compl. ¶¶ 11-12). Plaintiff alleges that the information provided by Defendant to Equifax was inaccurate because the account status notation indicated that it was over 120 days past due even though the account had been transferred to a different lender. (*Id.* ¶ 14). The account, however, was identified as "closed," the balance reported as "$0," no monthly payment amount was stated, and the comment field showed that the "[c]onsumer disputes this account information." (Credit Report at 53-54). Plaintiff alleges further that credit scoring algorithms take the account status field into account when generating credit scores. (Compl. ¶ 15).

Plaintiff disputed the allegedly inaccurate payment status notation with Equifax on February 4, 2021. (*See generally* Doc 26-1). Plaintiff alleges that Equifax informed Defendant of the dispute but that Defendant failed to investigate and correct the allegedly inaccurate information. (Compl. ¶¶ 19-22).

Plaintiff, with respect to the damages, pleads that:

> Defendant . . . continue[s] to publish and disseminate . . . inaccurate information to other third parties, persons, entities and credit grantors, as evidenced by the inquiries on the Plaintiff's credit report in the form of hard and soft pulls [and] Plaintiff suffered concrete harm in the form of a decreased credit score, loss of credit, loss of ability to purchase and benefit from  credit, a chilling effect on applications for future credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial.

(*Id.* ¶¶ 24-25). This litigation followed.

## STANDARD OF REVIEW

I.       Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (quoting *Makarova*

*v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists." *Hettler v. Entergy Enters., Inc.*, 15 F. Supp. 3d 447, 450 (S.D.N.Y. 2014) (citing *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009)). However, "[w]hen the Rule 12(b)(1) motion is facial, i.e., based solely on the allegations of the complaint . . . the plaintiff has no evidentiary burden," and "[t]he task of the district court is to determine whether the [complaint] alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter v. Healthport Techs., LLC*, 822 F.3d 46, 56 (2d Cir. 2016). Moreover, when deciding a rule 12(b)(1) motion, "the Court 'must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.'" *Krausz v. loanDepot.com, LLC* (quoting Conyers, 558 F.3d at 143); *see also Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 274 (S.D.N.Y. 2019).

When a defendant seeks dismissal under Rule 12(b)(1) "as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-06547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

II.     Federal Rule of Civil Procedure 12(b)(6)[2]

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim

---

[2] Plaintiff contends that Defendant's motion seeks to dismiss, *inter alia*, "for failure to state a claim under Rule 12(c)." (Opp. Br. at 1). Defendant's motion to dismiss for failure to state a claim is made under Rule 12(b)(6) (*see* Doc. 24), which is appropriate as Defendant has not yet filed an Answer and the pleadings are not closed. A Rule 12(c) motion is an inappropriate vehicle until "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(c). That Equifax had filed an Answer prior to Plaintiff's voluntarily dismissal of that entity is of no consequence to this analysis. Defendant's motion to dismiss for failure to state a claim is therefore properly considered under Rule 12(b)(6).

upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

III.    Documents Considered on the Motion to Dismiss

The Court, in deciding a Rule 12(b)(1) motion, "may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113. Indeed, on such a motion, the Court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue," along with "matters of which judicial notice may be taken." *Malloy v. Pompeo*, No. 18-CV-04756, 2020 WL

5603793, at *8 (S.D.N.Y. Sept. 18, 2020) (internal quotation marks omitted). Similarly, on a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider . . . documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which plaintiff relied in bringing the suit."). Even if a document is not incorporated into the complaint by reference, the Court may consider it "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)); *see also Schafer v. Direct Energy Servs., LLC*, 845 F. App'x 81, 82 (2d Cir. 2021) ("Where an extrinsic document is not incorporated by reference, the district court may nevertheless consider it if the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal quotation marks omitted)).

Defendant submitted two documents as exhibits to its declaration in support of its motion to dismiss: (i) Exhibit A, a "Statement of Dispute" of the accuracy of her account sent by Plaintiff to Equifax on February 4, 2024 (Doc. 26-1); and (ii) Exhibit B, an excerpted version of Plaintiff's credit report from Equifax, dated August 24, 2021 (Doc. 26-2). Defendant's Exhibit A is properly considered on this motion because it is explicitly referenced in the Complaint and is integral to Plaintiff's claims therein. (*See* Compl. ¶ 18). Defendant's Exhibit B, although not explicitly referenced in the Complaint, is integral thereto because the allegedly inaccurate report forms the

basis of Plaintiff's claims. Moreover, Plaintiff submitted a complete version of this same credit report as an exhibit to its opposition to this motion. The Court can and will, accordingly, consider both documents.

## ANALYSIS

The FCRA was enacted in "1970 to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The FCRA, as part of this objective, "places distinct obligations on three types of entities: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies." *Lichtman v. Chase Bank USA, N.A.*, No. 18-CV-10960, 2020 WL 1989486, at *3 (S.D.N.Y. Apr. 27, 2020) (quoting *O'Diah v. New York City*, No. 02-CV-00274, 2002 WL 1941179, at *12 (S.D.N.Y. Aug. 21, 2002)). Plaintiff's theory of liability against Defendant is based on statutory obligations as a furnisher of information as contemplated by the FCRA. "[T]hese obligations involve the duty to provide accurate information and to correct inaccurate information, 15 U.S.C. § 1681s–2(a), and to conduct an investigation after receiving notice of a credit dispute from a consumer reporting agency, § 1681s–2(b)." *Nguyen v. Ridgewood Sav. Bank*, 66 F. Supp. 3d 299, 303 (E.D.N.Y. 2014) (citing *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 150 (2d Cir. 2012)).

Defendant argues that Plaintiff's claims under the FCRA fail because: (i) Plaintiff lacks Article III standing; and (ii) the Credit Report, taken as a whole, is not inaccurate or misleading. (*See generally* Def. Br.). The Court turns first to Defendant's argument regarding the lack of subject-matter jurisdiction and dismissal mandated under Rule 12(b)(1) and, because the Court agrees that Plaintiff lacks standing, "it must dismiss the complaint for lack of subject matter

jurisdiction . . . ." *Richardson v. Edgewell Personal Care, LLC*, No. 21-CV-08275, 2023 WL 1109646, at *2 (S.D.N.Y. Jan. 30, 2023) (citing *Saint-Amour*, 388 F. Supp. 3d at 286).

"Article III of the Constitution limits the judicial power of the United States to the resolution of cases and controversies. This limitation is effectuated through the requirement of standing." *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir. 2009) (internal citation omitted). "Where a party lacks standing to bring a claim, the court lacks subject matter jurisdiction over such claim." *Zlotnick v. Equifax Info. Servs., LLC*, No. 21-CV-07089, 2022 WL 351996, at *2 (E.D.N.Y. Feb. 3, 2022). Standing, as reiterated recently by the Supreme Court, requires that:

> a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief. If the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve.

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (internal citations and quotation marks omitted). In short: "No concrete harm, no standing." *Id.* at 2200. Concrete injuries are "physical, monetary, or cognizable intangible harms traditionally recognized as providing a basis for a lawsuit in American courts." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442-43 (2d Cir. 2022) (quotation removed). With respect to FCRA claims, "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." *TransUnion*, 141 S. Ct. at 2210. Moreover, "the mere risk of future harm, standing alone, cannot qualify as a concrete harm." *Id.* Any risk to a plaintiff's financing must be "alleged to have materialized." *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 65 (2d Cir. 2021) (holding that the risk that someone "might access the [plaintiff's credit record] and act upon it . . . cannot form the basis of Article III standing").

Plaintiff pleads four concrete harms: (i) publication and dissemination of "inaccurate information to other third parties, persons, entities and credit grantors, as evidenced by the inquiries on the Plaintiff's credit report in the form of hard and soft pulls"; (ii) "decreased credit score, loss of credit, [and] loss of ability to purchase and benefit from credit"; (iii) "a chilling effect on applications for future credit"; and (iv) "the mental and emotional pain, anguish, humiliation and embarrassment of credit denial." (Compl. ¶¶ 24-25). Each of these purported harms are, however, insufficient to establish an injury-in-fact.[3]

I. Hard and Soft Pulls

The Credit Report submitted by Plaintiff contradicts the Complaint's assertion that hard pulls were made on Plaintiff's file. (Credit Report at 65 ("You currently do not have any Hard Inquiries in your file."). Rather, only soft pulls were made. *Id.* Soft pulls, as noted by the Credit Report, "do not impact your credit rating/score." *Id.*; *see also Krausz v. loanDepot.com, LLC*, No. 22-CV-00152, 2022 WL 16960928, at *3 (S.D.N.Y. Nov. 16, 2022) ("'soft pulls' refer to inquiries made by businesses with which the consumer already has a business relationship and inquiries made by credit card or insurance companies, such as pre-screening before making special offers to existing customers.") (quotation removed). Because these soft pulls have no impact on credit, Plaintiff is unable to show that she "suffered an actual credit denial, reputational harm, or any other concrete adverse consequences." *Id.*

---

[3] Plaintiff, in opposition, does not contest Defendant's arguments with respect to the second, third, or fourth categories of alleged harm. The Court, accordingly, deems those arguments waived. *See Tarrant v. City of Mount Vernon*, No. 20-CV-09004, 2021 WL 5647820, at *5 (S.D.N.Y. Dec. 1, 2021) ("Plaintiff chose consciously, by his silence [in opposition], to waive and abandon any argument he could have made."); *see also Felske v. Hirschmann*, No. 10-CV-08899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) ("A plaintiff effectively concedes a defendant's arguments by his failure to respond to them."). Nevertheless, the Court considers each of plaintiff's alleged harms, and for the reasons stated herein, Plaintiff's claims fail on the merits of the harms alleged.

Plaintiff, however, relying on *TransUnion,* argues that dissemination of a credit report, even through soft pulls, is sufficient to establish reputation injury on its own. (Opp. Br. at 7-11). That reliance is misplaced. The *TransUnion* Court held that intangible reputational harm associated with the tort of defamation could suffice to establish standing. *TransUnion*, 141 S. Ct. at 2208. The Court, noting that "a person is injured when a defamatory statement that would subject him to hatred, contempt, or ridicule is published to a third party," deemed certain class members to have established standing. Because "TransUnion provided third parties with credit reports containing OFAC alerts that labeled the class members as potential terrorists, drug traffickers, or serious criminals," that portion of the class was determined to have standing. *Id.* at 2208-09 (quotation removed). The criminality aspect of the information disseminated was material to the finding of reputational harm as a basis for standing in *TransUnion*. That type of allegation is simply absent here. There is no comparable allegation of reputational harm here where, via soft pulls, existing creditors of Plaintiff's were merely able to see her Credit Report in order to, for example, pre-screen before making special offers to her. This case, in terms of reputational harm allegations, is squarely on point with Judge Briccetti's recent decision in *Krausz*, wherein he held that "plaintiff's conclusory allegation that he experienced 'hard and soft pulls' on his credit file is insufficient to confer standing." *Krausz*, 2022 WL 16960928, at *4. Plaintiff simply fails to allege that she faced any real-world—tangible or intangible—consequences from any pulls on her Credit Report.

## II.   Loss of Credit

The Complaint's allegation that Plaintiff faced a "decreased credit score, loss of credit, [and] loss of ability to purchase and benefit from credit" is belied by the Credit Report itself in that only soft pulls were made, and those soft pulls did not and could not impact Plaintiff's credit score.

(*See* Credit Report at 53 (stating that soft pulls "do not impact your credit rating/score.")); *see also Doak v. Cap. One, N.A.*, No. 18-CV-07102, 2019 WL 4645162, at \*4 (N.D. Cal. Sept. 24, 2019) ("A 'soft pull' does not impact a consumer's credit score."). There is no allegation as to how else Plaintiff's credit could have been impacted. Moreover, "[a] lowered credit score in and of itself is not a concrete harm." *Zlotnick v. Equifax Info. Servs., LLC*, 583 F. Supp. 3d 387, 392 (E.D.N.Y. 2022). Finally, these allegations of harm are entirely conclusory and insufficient to establish standing. Plaintiff has failed to identify either a single lender that reacted adversely to the information on her Credit Report or a single loan that she was denied. *See id.* ("Absent from plaintiff's submissions are any allegations or other support that plaintiff was in fact denied credit or that plaintiff suffered any concrete consequences as a result of an allegedly lowered credit score.").

III.  Future Harm

Plaintiff's allegation with respect to "a chilling effect on applications for future credit" fares no better because "allegations of possible future injury are not sufficient." *Id.* at 391 (emphasis in original). The Supreme Court has made clear that "the risk of future harm on its own does not support Article III standing for [a] plaintiffs' damages claim." *TransUnion*, 141 S. Ct. at 2213.

IV.  Emotional Harm

Lastly, Plaintiff's alleged harm of "emotional pain, anguish, humiliation and embarrassment *of credit denial*" (emphasis added) fails for two reasons. First, "the [C]omplaint is devoid of any allegation that plaintiff was actually denied credit." *Krausz*, 2022 WL 16960928 at \*4. Plaintiff cannot have been humiliated by credit denial when she was never denied credit. Second, even if there was a credit denial, claims of emotional harm "must be supported by

sufficient allegations" to support that the harm occurred. *Zlotnick*, 583 F. Supp. at 391-392. A plaintiff must "plead enough facts to make it plausible that they did indeed suffer the sort of injury that would entitle them to relief." *Maddox*, 19 F.4th at 65-66. The conclusory allegations here, such as the mere invocation of the words "emotional pain," are insufficient to establish concrete harm without any additional detail.

None of Plaintiff's allegations of harm are ultimately sufficient to establish injury-in-fact. Plaintiff therefore lacks Article III standing and this Court lacks subject matter jurisdiction over this case.[4]

## <u>CONCLUSION</u>

For the reasons outlined above, Defendant's motion to dismiss is GRANTED. Accordingly, this case is dismissed "for lack of subject matter jurisdiction without prejudice to refiling in state court if appropriate." *Zlotnick*, 583 F. Supp. 3d. at 392 (citing *TransUnion*, 141 S. Ct. at 2224 (Thomas, J., dissenting) (suggesting that state courts may have jurisdiction over certain claims even in the absence of Article III standing)).

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 24 and close this case.

**SO ORDERED:**

Dated:    White Plains, New York
          February 9, 2023

_____
PHILIP M. HALPERN
United States District Judge

---

[4] The branch of Defendant's motion seeking relief under Fed. R. Civ. P. 12(b)(6) is denied as moot.